UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LERNARDO SAIN,

      PETITIONER,

                                        CASE NO: 07-20309-07

v.                                 HONORABLE VICTORIA A. ROBERTS

UNITED STATES OF AMERICA,

      RESPONDENT.

_____/

**ORDER REGARDING EVIDENTIARY HEARING**
**AND SETTING HEARING DATE**

**I.      INTRODUCTION**

This matter is before the Court on Petitioner Lernardo Sain's Motion to Vacate

his sentence pursuant to 28 U.S.C. § 2255. The Court will hold an evidentiary hearing;

there appear to be fact issues in dispute.

**II.     BACKGROUND**

Petitioner was sentenced by this Court to a mandatory minimum of 120 months

in prison after he pled guilty to conspiracy to possess with intent to distribute and to

distribute marijuana in violation of 21 U.S.C. §§ 841, 846. At Petitioner's sentencing

hearing, it was unclear whether Petitioner was entitled to a sentence reduction under

United States Sentencing Guideline § 5C1.2, the "safety valve" provision. If Petitioner

qualified, the Court had to disregard the 120 month statutory mandatory minimum

otherwise applicable to Petitioner's crime. Petitioner's Rule 11 Plea Agreement and the

attached worksheets reveal that the Government believed he would qualify under the

provision.

The Court held a plea hearing on December 16, 2008; it was continued to January 6, 2009 to give the parties time to determine whether Petitioner was entitled to safety valve protection.  On January 6, the Court informed Petitioner that he would qualify for safety valve protection if he cooperated with the Government.  The Government and the Court assured Petitioner that he need not name other members of the conspiracy to benefit from the provision.

On March 18, 2009, Petitioner and his attorney, John Brusstar, met with Assistant United States Attorney Michael Buckley, DEA Special Agent Luigi Milani, and DEA analyst Tony Los to make a safety valve proffer under U.S.S.G. § 5C1.2.  Defense Counsel's Sentencing Memorandum states "Mr. Sain made what he believed was a good faith effort to become eligible for the two-level reduction in his guidelines known as 'Safety Valve.'" (Doc. 285; Def's Sentencing Memorandum at 1).

On June 24, 2009, the day before Petitioner's sentencing hearing, Mr. Buckley sent the Court an email, stating:

> On March 18, 2009, [the Government] met with Mr. Sain and his counsel. Mr. Sain refused to provide any factual details of his involvement in the crime, saying only that he "was involved in the conspiracy."  Mr. Sain refused to answer even basic questions.  There were minutes-long periods of silence.  The meeting lasted one and one half hours before we finally ended it.  Mr. Sain shook my hand and said he would "rather do 10 years" than provide detailed information concerning the conspiracy.  It is our position that Mr. Sain is therefore not entitled to safety valve relief.

The Government believed that Petitioner did not meet the requirement of U.S.S.G. § 5C1.2(a)(5), to truthfully provide to the Government "all information and evidence [he] has concerning the offense...."

2

At the sentencing hearing, Petitioner and his counsel gave a different account of the meeting.  Mr. Brusstar stated:

> In that meeting, Mr. Sain was told simply he had to tell what he did, so he told Mr. Buckley and the Agents he showed up on June 5th, 2007 to unload a bunch of marijuana.  His brother was there and he met other people and that much we know.  So that was his understanding of all he had to do to enable himself to get that safety valve, was to tell what he did.

(6/25/09 Tr. 5).

The Court told defense counsel that under the provision, Petitioner had to provide information about the acts of others, not only his own acts.  (*Id.* at 5-6).  The Court asked Mr. Buckley if the meeting was recorded; he responded it was not.  (*Id.* at 4).  The Court then asked Petitioner if he understood what he had to do to obtain relief. (*Id.* at 6).  Petitioner responded:

> At that time, Your Honor, Mr. Buckley told me and if I'm not mistaken he said it to you in the transcript that I would only have to tell him what I did. He told me in the hall, me and Mr. Brusstar, that [as] long as I tell him what I did, he didn't want to know about what nobody else did, the case was over and when I got to talk to him, he was like well, I did say that, he say (sic) but I lied.  That's not how it go (sic).  He say (sic) I'm a man of my word, but that's not how it go (sic).  You here today to tell on people and that wasn't my understanding in my plea.

(*Id.*).

The Court admonished Petitioner that he could not obtain relief by simply saying "I was involved" in the conspiracy.  (*Id.*).  Petitioner responded that he told Mr. Buckley more than that; he said he gave him factual details about his involvement.  (*Id.*) However, when Mr. Buckley asked about other people, Petitioner stopped providing information because he did not know the other people involved.  (*Id.*).  When asked by the Court if he knew anything other than what he told the Government about "what happened at European Marble [ ] that day," Petitioner stated he did not.  (*Id.* at 6-7).

3

The Court responded that if he could not provide any further details such as how he

became involved in the conspiracy, who got him involved, and what the conspirators

were planning to do with the marijuana, he could not benefit from the safety valve

provision.  (*Id.* at 7).

        After Petitioner again claimed he told Mr. Buckley everything he knew about the

conspiracy, Mr. Buckley said he would have been satisfied if Petitioner merely told him

what he did.  (*Id.*).  Mr. Buckley explained, he knew Petitioner rented a 2007 blue

Mustang from Hertz, through a third party nominee, that was spotted at the scene of the

crime on the day of Petitioner's arrest.  (*Id.* at 11).  However, Petitioner gave the keys to

someone else; that person got away in the car.  (*Id.*).  Mr. Buckley stated he asked

Petitioner who he gave the keys to, but Petitioner refused to answer.  (*Id.* at 8).  Mr.

Buckley elaborated that the interview lasted 90 minutes; when it concluded Petitioner

said, "I would rather do 10 years than talk about anything else."  (*Id.*).  Petitioner

claimed he did not make that statement.  (*Id.*).

        The Court gave Petitioner an opportunity to consult with this attorney about

adjourning the sentencing hearing, to allow him to meet with Mr. Buckley and provide

more information. (*Id.*) After the break, defense counsel told the Court that Petitioner

provided all the information he could and was ready to be sentenced.  (*Id.* at 9).  The

Court asked Mr. Buckley what information Petitioner specifically provided during the

March 18 meeting. (*Id.*).  Mr. Buckley responded that he did not take notes; he had

trouble recalling certain details, but stated that Petitioner refused to answer when asked

about the person driving the Mustang at the crime scene.  (*Id.* at 9-10).  Petitioner said

he gave more details, including that he was hired help, he went to a warehouse,

McDonald's and returned, and "Mike Jones" hired him.  (*Id.* at 10).  The Court asked

Petitioner, "you were not prepared to give Mr. Buckley the name of [the individual

driving the blue Mustang at the European Marble on June 5, 2009]?"  Petitioner

answered, "That's correct, Your Honor."  (*Id.* at 11).

   The Court found that Petitioner did not qualify for safety valve protection because

he did not provide truthful information to the Government about all information and

evidence he had.  (*Id.* at 12).  The Court told defense counsel it faulted him for not

"dissuad[ing] Mr. Sain of the notion that all he had to do was provide information about

himself."  (*Id.* at 13).  Mr. Buckley interjected:

> Judge, if I may and it's not my custom certainly to stand up for Defense
> Counsel, but I would say in this case there did come a point when I finally
> said Mr. Sain, I would be satisfied if you would just tell me what you did
> and he refused.  Mr. Brusstar – I was there, he tried – we were there for
> 90 minutes, Judge and I understand – .

(*Id.*).  The Court responded: "A defendant should not go to a safety valve proffer under

the notion that all he has to do is provide information about himself.  That should never

happen."  (*Id.*).  Defense counsel replied: "And, Your Honor, we had discussed with Mr.

Buckley though in the hallway prior to the plea, which may have led to some

misunderstandings.  But in any event, what happened in that meeting, it took a long

time to get to that point of breaking down, but we tried.  That's all I'm saying."  (*Id.*).

   The following exchange ensued:

> MR. SAIN: I asked him in the hallway before I took the safety
> valve plea is this how it work, and he said yeah.  I don't want to know
> about nobody else.  So I was under the impression I only had to –
> because I did tell him in the hallway that I take the 10 and we don't have to
> go through me sitting down and talk with ya'll (sic).  I did tell him that in the
> hallway and he told me that he didn't want to know nothing about it.  The
> case was never.  He didn't – everybody else is done.  I was the last one

and I just have to tell him what I did.  He said I had to convince him and my lawyer heard him tell me when we went to the conference that he lied.

MR. BUCKLEY: Again, if I need to respond to that accusation, I never lied to Mr. Sain.  What I was attempting to distinguish for him was the difference between full blown cooperation and a safety valve proffer.  Now if he didn't understand that, I can't take responsibility for that, but I never lied to Mr. Sain.

THE COURT: And whether he lied or not, I said this already, I will reiterate it.  The rules are real clear at what has to happen at a safety valve proffer and that's what you were at on March 18.

MR. SAIN: Yes, that's right.

THE COURT: And you should have understood those rules and you shouldn't have been locked into what somebody else told you, what someone may have told you months before.

MR. SAIN: Right.  Well, excuse me, Your Honor.  I don't understand the law.  So I really didn't know how it go, so that's what I was telling him.  I take that if you say that's all I have to do.  That's how I was looking at it because I really don't know how it work.  I don't know the law.

THE COURT: Well, I've tried to explain it to you this afternoon, Mr. Sain.

MR. SAIN: Yes.

THE COURT: And I understand that after taking that break, after understanding that it's not sufficient for you to just provide information about yourself, you are making the decision that you want me to go forward and sentence you.  Is that what you're saying?

MR. SAIN: I told him what I done your Honor.  Yeah.

THE COURT: You told him what you did?  You didn't tell him any information about anybody else?

MR. SAIN: No, I didn't tell him no information about nobody else.

THE COURT: Is that – do you have information on other people?

MR. SAIN: No I don't, Your Honor.  Only thing I told him about the rental card (sic).  I gave him information about the guy who got the car for me.  I got it for my daughter.  I told him that.

THE COURT: Well, you know safety valve is not supposed to require coercion by the Court or by the Government.  It is supposed to be something that the Defendant volunteers to do, wants to do to benefit himself and we have spent almost a half hour now talking about whether you know anything, whether you want to tell anything.  If nothing else, Mr. Sain, the fact you rented this Mustang, that it was at the scene, that it took off and now you can't say anything about who was in that car, that alone indicates to the Court that you have not provided truthful and full information to the Government and that is the only question I have to ask myself; did the Defendant give truthful information and evidence to the Government relevant to the crime you committed.

***

THE COURT: ... He asked you a very specific question about who was driving a car that you rented a week before and that left the scene and you refuse to give that information, right?

MR. SAIN: Yes.

THE COURT: You don't want to give that information?

MR. SAIN: I don't know.

THE COURT: What do you mean you don't know?

MR. SAIN: I don't know who was in the car.  I know how I got the car, but I don't know who had the car that day.

(6/25/09 Tr. 14-16).  The Court sentenced Petitioner to 120 months in prison.

III.   ANALYSIS

A.   Motion to Vacate Standard

Pursuant to section 2255, a prisoner in custody under sentence of a federal court

may move the court to vacate, correct, or set aside the sentence on grounds that

"the sentence was imposed in violation of the Constitution or laws of the United States,

or that the Court was without jurisdiction to impose such sentence, or that the sentence

was in excess of the maximum authorized by law, or is otherwise subject to collateral

attack."  28 U.S.C. § 2255.  The petitioner bears the burden to show he is entitled to

relief.  *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

To prevail on a § 2255 motion that alleges constitutional error, the petitioner must

establish an error "of constitutional magnitude which had a substantial and injurious

effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488

(6th Cir. 1999).  When the motion alleges non-constitutional error, "the petitioner must

establish a fundamental defect which inherently results in a complete miscarriage of

justice, or, an error so egregious that it amounts to a violation of due process."  *Id.*

(citations and internal quotation marks omitted).  Thus, "[a] motion brought under § 2255

must allege one of three bases as a threshold standard: (1) an error of constitutional

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or

law that was so fundamental as to render the entire proceeding invalid."  *Weinberger v.
United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Petitioner did not directly appeal his sentence; he says he believes "an ineffective

assistance of counsel claim would be best remedied via a § 2255 motion." (Motion to

Vacate at 4).  "Normally, sentencing challenges must be made on direct appeal or they

are waived."  *Weinberger*, 268 F.3d at 351; *see also Regalado v. United States*, 334

F.3d 520, 528 (6th Cir. 2003) ("Section 2255 is not a substitute for a direct appeal, and

thus a defendant cannot use it to circumvent the direct appeal process.").

The general rule is claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). However, because a defendant claiming ineffective assistance of counsel will often need to develop the district court record, and the district court is better suited than the appellate court to assess the facts related to the adequacy of defense counsel, an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 503-06 (2003).

**B.       Ineffective Assistance of Counsel Standard**

In *Strickland v. Washington*, the Supreme Court held that to establish ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was unreasonable because he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) the deficient performance prejudiced the defendant. 466 U.S. 668, 687 (1984). "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

The Supreme Court warns, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'must be considered sound [ ] strategy." *Id.* "To establish prejudice,

9

Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result." *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003).

### C.    Petitioner's Motion

Petitioner claims his defense counsel was constitutionally deficient at sentencing because he did not adequately explain U.S.S.G. § 5C1.2, the "safety valve," and because he did not pursue a minor participant reduction.

### 1.    The "Safety Valve"

Petitioner alleges that the Court and defense counsel did not adequately explain the safety valve to him and he did not understand his obligation to provide the Government with everything he knew about the conspiracy.  He says defense counsel and the Court led him to believe he would not need to name other conspirators to be protected by the provision, as long as he described his involvement in the conspiracy. Petitioner says he gave the Government all the information he had about the conspiracy.  He points out that at his January 6, 2009 plea hearing, the prosecutor, Mr. Buckley, assured him that "safety valve eligibility depends on his coming in and talking only about what he did and not naming other people."  (1/6/09 Tr. 3).

The Court made the same assurance:

Yes.  Mr. Sain, there are two types of cooperation.  You can cooperate only with respect to your participation in this crime; that qualifies you for the safety valve.  More substantial – and the Court can go below that mandatory minimum.  You could qualify for a 5K and provide more substantial assistance if you give the Government information about other people, other offenses and I don't – and I know that the Rule 11 does not cover that as a possibility, but that would give the Court a basis for sentencing you to an even lower sentence, but that is something you need

to talk to your lawyer about.

(*Id.* at 4).

Petitioner states his limited education and sixth grade reading level made it difficult for him to understand his safety valve obligations.  He says the Government's recommendation was unreasonable "when in fact neither...the Government, the Court, nor Petitioner's attorney [appreciated] that Petitioner did not fully understand...the matter."  (Petitioner's Motion).

### 2.    Minor Participant Reduction

Petitioner contends defense counsel was ineffective for not pursuing a "mitigating role" sentence reduction under U.S.S.G. § 3B1.2.  He refers to his sentencing testimony that he was an "off-loader" or a "mule."  He says counsel had a duty to request that the Court apply the four-level reduction because he was a minimal participant in the conspiracy like his co-conspirators, Herrera, Castenenda, and Gonzalez.

### D.    The Record Contains Factual Disputes Regarding Whether Defendant Understood the Safety Valve and Whether It Should have been Applied

"If the record contains a factual dispute, the district court 'must hold a hearing to determine the truth of the petitioner's claims.'"  *Ross v. United States*, 339 F.3d 483,490 (6th Cir. 2003) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "Petitioner is not entitled to a hearing, however, 'if the files and records of the case conclusively show that he is not entitled to relief.'"  *Id.*  (quoting *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995)).  Stated another way, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by

11

the record, inherently incredible, or conclusions rather than statements of fact.'"

*Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v.*

*United States*, 68 F.3d 238, 240 (8th Cir. 1995)).  Where, as here, the court considering

the § 2255 motion also conducted the plea and sentencing hearings, the court may rely

on its recollection.  *Id.*  The burden on a petitioner in a habeas case to establish a right

to an evidentiary hearing is not onerous.  *Turner*, 183 F.3d at 477.

Under U.S.S.G. § 5C1.2, a district court may impose a sentence for certain

crimes without regard to any statutory minimum sentence, if the court finds that the

defendant meets the five criteria listed in 18 U.S.C. § 3553(f)(1)-(5).  At Petitioner's

sentencing hearing the Government did not dispute that Petitioner met the first four.  At

issue was the fifth, which says, by the time of sentencing the defendant must have:

> truthfully provided to the Government all information and evidence the
> defendant has concerning the offense or offenses that were part of the
> same course of conduct or of a common scheme or plan, but the fact that
> the defendant has no relevant or useful other information to provide or that
> the Government is already aware of the information shall not preclude a
> determination by the court that the defendant has complied with this
> requirement.

18 U.S.C. § 3553(f)(5).

This provision requires Petitioner to provide the Government with all of the

evidence he has related to the conspiracy, including details he knows about others'

involvement.  However, the record reveals some confusion concerning whether defense

counsel properly instructed Petitioner about his obligations to the Government such that

I believe Petitioner has met his "light" burden to show a right to an evidentiary hearing.

*Turner*, 183 F.3d at 477.

Petitioner was given erroneous information about his safety valve obligation by

the prosecutor and Court at the January 6, 2009 plea hearing.  He was told he need not

implicate others to acquire safety valve protection.  At Petitioner's sentencing hearing,

defense counsel said that at the March 18 meeting with the Government, Petitioner was

simply told he had to describe his own involvement in the conspiracy, which is what he

did.  (6/25/09 Tr. 5).

While the Court attempted to clarify to Petitioner that he was required to provide

factual details related to other conspiracy members, including the name of the person

driving the Mustang, Mr. Buckley's remarks during the sentencing hearing were

confusing.  Mr. Buckley said he would have been satisfied if Petitioner merely told him

*what he did*, but that he refused to do that by not telling Mr. Buckley *who he gave the*

*Mustang keys to*.  However, by providing the name of an accomplice, Petitioner would

be doing more than restricting his information to his involvement in the conspiracy.  Mr.

Buckley also indicated that there came a point during the March 18 interview where he

told Petitioner *he would be satisfied if Petitioner simply told him what he did* on the day

in question, which Petitioner and defense counsel said Petitioner did.  Mr. Buckley said

the interview broke down when Petitioner failed to provide the name of the person to

whom he gave the Mustang keys, and based on this failure, Mr. Buckley did not believe

Petitioner was making a good faith effort to tell him about *his* participation in the

enterprise.  (6/25/09 Tr. 11).

Mr. Buckley's confusing and contradictory statements at the plea and sentencing

hearings, and the Court's statement at the plea hearing, combined with the lack of a

record of clarification on the part of defense counsel, necessitate a hearing.  Mr.

Brusstar's statement that Petitioner believed all he needed to do to obtain safety valve

13

protection was describe his own involvement in the conspiracy, without implicating others, suggests that defense counsel himself lacked a complete understanding of the provision.  Defense counsel was obligated to make sure that his client understood what was required of him, despite trial court or Government error.  Perhaps more importantly, defense counsel and the prosecutor should have agreed, in advance of the proffer, on what information defendant was expected to provide in order to satisfy the Government. Generally speaking, §5C1.2 requires truthful disclosure of all information the defendant has concerning the offense of conviction and all relevant conduct.  This means a defendant must disclose information regarding his conduct and the related acts of others.  However, it appears that at different points, Mr. Buckley signaled to the defendant that he would be satisfied with less than full disclosure.

At an evidentiary hearing, the Court may be able to determine whether Petitioner gave the Government all the information he had regarding the crime, and whether Mr. Buckley sought something less than that.  In his motion, Petitioner said he was a hired helper whose only role in the conspiracy was to unload a truck of marijuana.  He said he was acting at the direction of "Mike Jones" and was unfamiliar with other people assisting in the plot.  Under these circumstances, it is plausible that Petitioner turned the Mustang keys over to an unknown person, at Mr. Jones' or someone else's behest. Petitioner did not offer these facts at the sentencing hearing, but neither was he asked why he gave the keys to a stranger.

Mr. Buckley said that Petitioner "wouldn't answer," when asked who he gave the Mustang keys to, but Mr. Buckley did not elaborate by saying, for example, Petitioner stated he knew the driver's name but would not tell Mr. Buckley.  Mr. Buckley admitted

14

that the interview was not tape recorded, he did not have any notes from the meeting, and the other individuals present during the meeting were not at the sentencing hearing to testify; Mr. Buckley had trouble recalling other facts from the meeting.

An evidentiary hearing would facilitate a narrowly-tailored factual investigation into the precise issues, and allow the court to make explicit findings, supported by the record.

After the hearing, if the Court determines that defense counsel did not adequately explain the safety valve provision to Petitioner, (or a more narrow agreement with the Government) *and that Petitioner was still confused about his obligation to the Government* because of counsel's deficient performance, the Court may have a basis to find that counsel's performance was prejudicial. If Petitioner had the benefit of the safety valve, the Court would have had complete discretion at sentencing; it could have even sentenced Petitioner below the applicable guidelines range of 70-87 months, rather than to a mandatory minimum of 120 months. *See*, *e.g.*, *Arredondo*, 178 F.3d at 784 ("...Platcha's alleged performance at sentencing – which may have increased Arredondo's sentence by as much as eight years – constitutes prejudice sufficient to implicate the *Strickland* framework.").

Even if the Court concludes that Petitioner understood his safety valve obligations at sentencing, if it determines that he truthfully gave the Government all the information he had, the Court could conclude Petitioner is entitled to relief based on Counsel's deficient performance. Petitioner stated over and over again during sentencing that he told Mr. Buckley everything he knew about the conspiracy and that, with the exception of Mike Jones, he did not know who the other conspirators were.

15

However, counsel did not stress this point.  Nor did he emphasize that under section

3553(f)(5), the Court had discretion to apply the safety valve even if Petitioner could not

provide the Government with useful information or information the Government was not

already aware of.  *See* 18 U.S.C. § 3553(f)(5) ("...but the fact that the defendant has no

relevant or useful other information to provide or that the Government is already aware

of the information shall not preclude a determination by the court that the defendant has

complied with this requirement.").  Counsel's complete lack of comment or argument on

this point could have been prejudicial to Petitioner if the Court believes such argument.

> In *Valentine v. United States*, the Sixth Circuit opined:

> The defendant's burden to show his right to a hearing is significantly lower
> than his burden to show he is entitled to § 2255 relief.  *See Turner*, 183
> F.3d at 477.  Here, [Defendant] offers more than a mere assertion of his
> innocence; he presents a factual narrative of the events that is neither
> contradicted by the record nor "inherently incredible."  His claim may prove
> false at the evidentiary hearing, but it is impossible to assess its veracity
> based on this record alone.  The purpose of the hearing, however, is to
> allow the court to make these factual determinations based on more than
> a defendant's affidavit and the contrary representations of the
> government.

488 F.3d 325, 334 (6th Cir. 2007).  This reasoning applies here.

### E.     Defense Counsel was not Constitutionally Ineffective for Failing to Seek an Unavailable "Mitigating Role" Reduction

Sain cannot establish that he was prejudiced under *Strickland*'s second prong, by

defense counsel's failure to argue for a mitigating role reduction.  Sain entered into a

Rule 11 Plea Agreement with the Government; the agreement did not incorporate a

mitigating role reduction.  Petitioner agreed to the sentencing calculations and

guidelines there.  (Doc. 209; Rule 11 Plea Agreement at 7).  He agreed not to take a

position contrary to that reflected in the sentencing worksheets attached to the

agreement.  (*Id.* at 3).  At the December 16, 2008 plea hearing, Petitioner said he read and understood the Plea Agreement.  (12/16/08 Tr. 6).  Petitioner also stated defense counsel discussed the agreement with him and was able to answer all of his questions before he signed it.  (Id. at 8).  He said he was satisfied with defense counsel's representation and he entered the agreement knowingly and voluntarily.  By knowingly and voluntarily giving up his right to argue for a reduction not anticipated by the agreement or reflected in the attached worksheets, Petitioner cannot now argue that he was prejudiced by defense counsel's failure to argue for such reduction at the sentencing hearing.

In addition, the Court found that Petitioner was not entitled to safety valve relief and it was required by statute to sentence him to 120 months.  For these reasons, any argument for a guideline reduction and a sentence below the mandatory minimum, based on Petitioner's minimal involvement in the scheme, would have been futile.  *See Strickland*, 466 U.S. at 691 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

## IV.   CONCLUSION

The Court grants an evidentiary hearing to determine (1) whether Petitioner understood that in order to obtain safety valve protection under U.S.S.G. § 5C1.2, he had to provide the Government with all information and evidence he had, including the names of co-conspirators, in particular the person he gave the Mustang keys to and (2) whether Petitioner knew the name of that person.  Alternatively, the Court will consider

evidence that the prosecutor indicated he would be satisfied if the defendant only gave information pertaining himself.  The hearing will take place on **MONDAY, AUGUST 22, 2011 AT 9:00 AM**.

According to Rule 8(c) of the Rules Governing section 2255 Proceedings for the United States District Courts, if a § 2255 motion is filed and the court determines an evidentiary hearing is warranted, the Court must appoint an attorney to represent a moving party who qualifies under 18 U.S.C. § 3006A to have counsel appointed.  Thus, the Court will appoint counsel for the evidentiary hearing.

**IT IS ORDERED.**


  /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 29, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Lernardo Sain by electronic means or U.S. Mail on June 29, 2011.

s/Linda Vertriest
Deputy Clerk

---